**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NINA WILLIAMS,
on behalf of minor child, Y.M.,                                    Case No. 1:15-cv-453

        Plaintiff,                                                      Dlott, J.
                                                                   Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Nina Williams filed this Social Security appeal in order to challenge the Defendant's finding that her minor child (hereinafter "YM") is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, the ALJ's finding of non-disability should be AFFIRMED.

**I. Background**

In December 2011, Plaintiff filed an application for Supplemental Security Income (SSI) on YM's behalf, alleging a disability due to attention deficit hyperactivity disorder ("ADHD") and mood disorder since January 1, 2008. After the application was denied initially and upon reconsideration, Plaintiff requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). In November 2013, ALJ Vincent Misenti held a hearing, at which Plaintiff appeared with counsel and YM. YM, who was 10 years of age and in the fifth grade, provided testimony at the hearing, as did her mother. On February 27, 2014, ALJ Misenti denied Plaintiff's SSI application in a written decision. (Tr. 18-32).

The ALJ agreed that YM has severe impairments of ADHD and mood disorder. (Tr. 21).  Considering those impairments, the ALJ found that YM functionally experiences a "marked" limitation in one relevant area or "domain" of her life – ability to care for herself.  (Tr. 30).  The ALJ determined that although YM has other limitations, those limitations are "less than marked." (Tr. 24-30).  Because YM has only one area of "marked" limitation, the ALJ determined that YM was not under disability, as defined in the Social Security Regulations, and was not entitled to SSI.  (Tr. 31).

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.

On appeal to this Court, Plaintiff first argues that the ALJ erred by failing to properly weigh the medical opinions in the record; namely, that the ALJ should have given more weight to the opinions of Plaintiff's counselors and teachers, and less weight to the opinions of the acceptable medical sources in the record, including the state agency reviewing psychologists and the consultative examiners. Plaintiff next argues that the ALJ's credibility analysis is not supported by substantial evidence.  Upon careful review, the undersigned finds that Plaintiff's asserted assignments of error are not well-taken.

## II.  Analysis

### A.  Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §1382c(a).  An individual under the age of eighteen will be considered to be under a disability if the child has a medically determinable impairment which results in marked and severe functional limitations, and which can be expected to result in death, or which has lasted, or can be expected to

last, for a continuous period of not less than 12 months. *See* 42 U.S.C. §1382c(a)(3)(C)(i).  The implementing regulations define the standard of "marked and severe functional limitations" in terms of "listing-level severity." *See* 20 C.F.R. §§416.902, 416.906, 416.924a, 416.926.

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. . .. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income by a person under the age of 18, the Social Security Agency is guided by a three-step sequential benefits analysis.  In this case, the first two steps of that analysis are uncontested.  At Step 1, the Commissioner asks if the claimant is performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are

"severe."   TD has not engaged in substantial gainful activity, and has severe impairments of ADHD and speech and language delays. (Tr. 17).

At Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments.  *See* 20 C.F.R. §416.924a.  The ALJ concluded that none of YM's impairments alone or in combination, met or medically equaled a Listed Impairment that would entitle YM to a presumption of disability.  The focus of Plaintiff's appeal to this Court is whether YM's mental impairments "functionally equal" a Listed impairment.

To determine functional equivalence, the Commissioner is required to assess the child's functioning in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §416.926a(b)(1). To prove functional equivalence to a Listing, Plaintiff must show that YM's impairments resulted in "marked" limitations in at least two of the six domains, or that his impairments were "extreme" in at least one of the domains.  20 C.F.R. §416.926a(d).  As stated, the ALJ determined that Plaintiff's limitations were "marked" in just one area – the domain of attending and completing tasks.   Both at the administrative level and before this Court, "Plaintiff has the ultimate burden of establishing the existence of a disability."  *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993).

### B.  The ALJ's decision is Supported by Substantial Evidence

1. *Evaluation of the Opinion Evidence*

Plaintiff's asserted errors appear to focus on the ALJ's findings relating to two domains: namely that YM was not markedly limited in Attending and Completing Tasks

and Interacting and Relating with Others.  Plaintiff argues that the weight of the evidence undermines the ALJ's findings.  In this regard, Plaintiff contends that all of the opinion evidence other than those from the nonexamining physicians and consultative examiner Dr. McKinney indicates at least marked limitations in these domains.

Attending and Completing Tasks considers how well a child is able to focus and maintain attention and how well she is able to begin, carry through, and finish activities. 20 C.F.R. § 416.926a(h). School-age children should be able to focus their attention "in a variety of situations in order to follow directions, remember and organize [] school materials, and complete classroom and homework assignments." *Id*. They should be able to change activities or routines without distraction, and stay on task and in place when appropriate. *Id.* They should be able to sustain their attention well enough to participate in group sports, read by themselves, and complete family chores. *Id*. They should also be able to complete a transition task (e.g. be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation. *Id.*

The Interacting and Relating with Others domain provides that school age children should be developing more lasting friendships with children who are of the same age and should begin to understand how to work in groups to create projects and solve problems. 20 C.F.R. § 416.926a(i). They should also have an increased ability to understand another's point of view and tolerate differences and should attach to adults other than parents. *Id.* They should also be able to talk to people of all ages, share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand. *Id*

With respect to Plaintiff's functional limitations the record contains the following opinion evidence:

On December 12, 2011, Counselor Asbury opined Y.M. had extreme limitations in attending and completing tasks and interacting and relating with others, marked limitations in acquiring and using information, moving about and manipulating objects, and caring for yourself, and no limitation in health and physical well-being. (Tr. 368).

On January 30, 2012, Plaintiff's third grade teacher, Janice Smith, provided an opinion regarding Y.M.'s school functioning. (Tr. 183-90). In terms of acquiring and using information, Ms. Smith opined Y.M. had "serious problems" in comprehending oral instructions, understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, and learning new material, and "very serious problems" in reciting and applying previously learned material and applying problem solving skills in class discussions. (Tr. 184). In the domain of attending and completing tasks, Ms. Smith opined Y.M. had "a very serious problem" in completing work accurately without careless mistakes and "serious problems" in focusing long enough to finish an assigned activity, refocusing to task when necessary, carrying out multi-step instructions, changing from one activity to another without being disruptive, organizing materials, completing assignments, and working at a reasonable pace and finishing on time. (Tr. 185). Ms. Smith also opined Y.M. had a "very serious problem" in expressing anger appropriately, "serious problems" in following rules and respecting and obeying adults in authority, and "obvious problems" in playing cooperatively with children, making and keeping friends, seeking attention appropriately, asking

6

permission appropriately, relating experiences and telling stories, using appropriate language, introducing and maintaining relevant and appropriate topics of conversation, taking turns in conversation, and interpreting the meaning of facial expression and body language. (Tr. 186).

On February 16, 2012, consultative examiner Regina McKinney, Psy. D., noted Plaintiff reported Y.M. experienced behavioral improvement when on her medications. (Tr. 374). Dr. McKinney observed Y.M. was unable to complete serial threes, could recall four digits forward and three digits backwards, and was unable to describe the relationship between lumber and bricks. (Tr. 375). Dr. McKinney opined no evidence of significant limitation acquiring and using information, no difficulties attending and concentrating, and indicated Y.M. had some aggressive tendencies and some behavior problems. (Tr. 376).

On August 29, 2012, consultative examiner W. Michael Nelson, Ph. D., opined Y.M. could understand oral instructions but requires significant repetition, has difficulties participating in conversations and providing organized oral explanations, difficulties with retention of knowledge in a group setting due to distractibility and behavior, requires redirection to stay focused on a task, difficulty sustaining attention for prolonged periods with the need for redirection, requires constant prompting to tasks, has difficulties sustaining dialogue, sustaining relationships and engaging in peer relationships, and following directions and expressing thoughts in appropriate language, would experience frustration when facing repeated redirections, and has difficulties with being aware of her mood states and verbalizing appropriate coping skills. (Tr. 417-18).

Dr. Nelson observed some agitation and frustration behaviors, speech that lacked spontaneity, and that she took a long time to answer questions. (Tr. 413). Dr.

7

Nelson noted she had some difficulties understanding instructions, had limited insight into her difficulties, and required questions be repeated during the examination. (Tr. 414). Dr. Nelson further noted she became frustrated when she did not know an answer, appeared bored and irritated at times, had a low energy level, impaired concentration, slow reaction time, varied persistence, and difficulty concentrating. *Id.*

On April 19, 2013, Therapist Sparks opined extreme limitations acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for yourself and no limitations in moving about and manipulating objects and health and physical well-being. (Tr. 478).  On October 31, 2013, Therapist Sparks opined an extreme limitation in interacting and relating with others, marked limitations in acquiring and using information, attending and completing tasks, caring for yourself, and health and physical well-being, and no limitation in moving about and manipulating objects. (Tr. 609).

The record also contains two functional evaluations from state agency reviewing psychologists both of whom concluded that YM had less than marked limitations in all functional areas except for caring for herself. (Tr. 79-80, 91-92). Notably, Karen Terry, Ph.D., reviewed the record in March 2012, and David Dietz, Ph.D., reviewed the record in September 2012. (Tr. 73-80, 89-91). They both explicitly considered the findings of Dr. McKinney, Ms. Asbary, and YM's educational records. *Id.* Dr. Dietz also considered the findings in Dr. Nelson's report. (Tr. 90). After considering all of this evidence, both psychologists opined that YM had less than marked limitations in all functional areas except for caring for herself. (Tr. 79-80, 91-92).

In finding that Plaintiff's impairments did not functionally equal a listing, the ALJ gave little weight to the findings of Brooke Asbary, PCC, Mary Scar Burough Sparks,

LTSW, and YM's teachers.  In so concluding, the ALJ noted that their findings that Plaintiff had marked and extreme limitations in functioning were inconsistent with, and not supported by, the evidence of record.  The ALJ also noted that none of these sources were "acceptable sources" as defined by the regulations.  Next, the ALJ "credited" the findings of the consultative examiners, Dr. McKinney and Dr. Nelson noting that they had the opportunity to examine Plaintiff and were acceptable medical sources.  (Tr. 24).  Last, the ALJ afforded significant weight to the findings of the state agency psychologists who both found that Plaintiff had less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and interaction and relating to others; marked limitations in caring for herself; and no limitations in health and physical well-being.  (Tr. 24).  Upon careful review, the undersigned finds that the ALJ's evaluation of the opinion evidence is substantially supported.

First, as more fully explained below, the record evidence does not support the extreme limitations found by Ms. Asbary, Ms. Sparks and YM's teacher. Furthermore, none of these sources were "acceptable" medical sources under the regulations. See 20 C.F.R. §§ 416.913; 416.927(a)(2); see SSR 06-03p ("Medical sources who are not 'acceptable medical sources' . . . [include] licensed clinical social workers . . . . 'Non-medical Sources' include[e] . . . teachers, counselors . . ."). The Sixth Circuit does not require an ALJ to explicitly discuss his evaluation of evidence from a non-acceptable medical source. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (requirement to provide good reasons for the weight given to opinions "only applies to treating sources"); *Smith v. Comm'r of Soc.* Sec., 482 F.3d 873 (6th Cir. 2007) ("SSA requires ALJs to give reasons for only treating sources") (emphasis in original).  Here,

the ALJ gave good reasons for affording these opinions limited weight, finding these opinions were inconsistent with, and not supported by, the evidence in the record (Tr. 23-24). See 20 C.F.R. § 416.927(c)(3)-(4) (medical opinions evaluated for supportability and consistency); SSR 06-03p (providing that ALJ's may use the factors in 20 C.F.R. § 416.927 to evaluate opinions from sources who are not "acceptable medical sources").[1]

In this regard, the ALJ noted that YM was socially appropriate, alert, oriented, and conversant during the hearing. (Tr. 22). She also had not been in special education classes and, even after her IEP, she was advanced with her grade to the fifth grade, and remained in the general classroom with an intervention specialist. (Tr. 22, 308-29). YM had normal speech and language skills, average cognitive functioning, no need for occupational or speech therapy, and a full scale IQ score of 94. (Tr. 23, 247-49, 258-60, 268). Although there were many reports of YM's outbursts and disrespectful behavior, she was only suspended from school briefly two or three times in the last couple of years, had only two fights in the past year, and there were reports that she was doing better after being placed in a smaller class. (Tr. 190, 236, 240-41).

Moreover, the record indicated that YM's functioning improved when she was compliant with her medications. (Tr. 23). In this regard the record indicates that at the time YM was brought to the hospital for suicidal and homicidal ideation after getting into a physical fight with her brother in July 2013, she was off her medications for a period before this incident. (Tr. 23, 558).[2] Plaintiff's mother also told the emergency room staff

---

[1] Plaintiff argues that the ALJ only considered "medical evidence" and not the totality of the record to discount the findings of Ms. Asbary, Ms. Sparks and YM's teachers. However, the ALJ's decision clearly indicates that he considered Plaintiff's testimony, YM's testimony and daily activities, and school records.

[2] Plaintiff argues that there is conflicting evidence about whether or not YM was really non-compliant with her medications at the time of this fight. However, the record shows that while YM had taken her medication at 5:30pm the night of the incident, she had not taken her medication the two previous days (Tr. 558).

that when YM was compliant with her medications, her behavior did not rise to the level of threatening to harm others. *Id.*

The ALJ also noted that YM appeared to be of average intelligence, easily followed conversation and stayed on topic, had no difficulties attending and concentration, recalled three words after a five-minute time delay, and recalled four digits forward and three digits backward. (Tr. 376). YM further reported that she had a few friends who she got along with well, though Williams told Dr. McKinney that YM was moody and easily angered. *Id.* Dr. McKinney also found that YM was not fussy about attending to her grooming and hygiene and assisted with household chores. Id. While YM had some behavior problems, she was receiving counseling to improve her self-soothing skills.

Dr. Nelson found that YM's ability to converse appropriately with an adult becomes problematic "at times" but that she understood oral instructions, though required significant repetition. (Tr. 416-17). He also noted that YM was generally able to pay attention and respond to questions during her evaluation, though this became problematic "at times." (Tr. 417). He opined that YM would have difficulty sustaining attention for prolonged periods of time, but that she did not get out of her seat during the testing or interrupt the testing in any way. *Id.* Dr. Nelson further observed that YM was capable of being cooperative and pleasant during one-on-one interactions with unfamiliar adults, but that she had a history of defiant behaviors and verbal/physical aggression, again, "at times." *Id.* Finally, Dr. Nelson opined that YM could complete some self-care tasks independently, though she needed prompting, and that she had difficulties with modulating her mood. (Tr. 417-18).

Plaintiff argues that the ALJ erred because he A failed to discuss the any specific limitations found by Dr. Nelson and the ALJ merely noted that he "generally credit[ed]" the opinion because Dr. Nelson examined Y.M. and was an acceptable medical source. (Tr. 24).  Contrary to this assertion, the ALJ properly discussed the record evidence and the weight given to it; he simply did not discuss every sentence of Dr. Nelson's findings. It is well established that an ALJ is not required to explicitly discuss "every single piece of evidence submitted by a party." K*ornecky v. Com'r of Soc. Sec.,* 167 Fed. Appx. 496, 508 (6th Cir.206) (quoting *Loral Defense Systems–Akron v. N.L.R.B .,* 200 F.3d 326, 453 (6th Cir.1999)) (citations and internal quotation marks omitted).

For the reasons discussed, substantial evidence exists to support the ALJ's determination that YM's impairment was "less than marked" in attending and completing tasks and interacting and relating with others.   It bears repeating that:

> The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.   If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d at 1035.  That the evidence could be interpreted to support *either* a "marked" or a "less than marked" finding in a particular domain does not mean that it must be interpreted in Plaintiff's favor.  The Commissioner's decision must be affirmed so long as "such relevant evidence [exists] as a reasonable mind might accept as adequate to support" it.  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Such is the case here.

### 2. Credibility Finding

Here, Plaintiff argues that the ALJ's credibility analysis was vague and conclusory and that he unfairly credited parts of YM's testimony while discounting others.

12

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers* v. *Comm'r of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001).

In this case, the ALJ's credibility determination comports with agency regulations and controlling law. Notably, as detailed above, the ALJ's decision indicates that he properly considered the evidence of record, including medical and school records, Plaintiff's testimony and the testimony of her mother.  As noted by the Commissioner, the ALJ gave sufficient reasons for finding that Plaintiff's and YM's allegations of YM's disability were not entirely credible. As discussed above, the evidence in the record undermined their claims that YM had marked limitations in certain functional areas. See supra 3-10; see also 20 C.F.R. § 416.929(c)(2) (directing an ALJ to consider the objective evidence when evaluating the credibility of a claimant's allegations). In addition, the ALJ properly considered that YM's medications helped control her symptoms (Tr.22-31). See 20 C.F.R. § 416.929(c)(3)(iv) (considering the effectiveness of medication on a claimant's symptoms).

Accordingly, the undersigned finds that the ALJ carefully considered Plaintiff's testimony and properly found that there was no objective evidence to support YM's allegations. *See also Walters,* 127 F.3d at 531. As detailed above, the ALJ's credibility analysis included the consideration of several factors.

In sum, the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence. *See Casey*

13

*v. Secretary of Health and Human Servs.,* 987 F.2d 1230, 1233 (6th Cir.1993). The ALJ properly evaluated Plaintiff's allegations in accordance with controlling law, and he reasonably concluded that they were not fully credible. The ALJ's credibility finding is entitled to deference and thus should be affirmed. *See Jones v. Commissioner of Social Security,* 336 F.3d 469, 476 (6th Cir.2003).

### III.  Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

NINA WILLIAMS,
on behalf of minor child, Y.M.,                                Case No. 1:15-cv-453

           Plaintiff,                                Dlott, J.
                                                      Bowman, M.J.

    v.

COMMISSIONER OF SOCIAL SECURITY,

           Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).